# Pittsburg, Virginia and Charleston Railroad Co. *versus* Rose.

1. Evidence that a railroad made it more difficult for the landowner to rent his property, is admissible in assessing damages for constructing the road.

2. In assessing damages for " embankment" and " excavation," in a street in front of property, the burden is on the company to show that there was an established grade of the street to which they conformed.

3. A point was: "to arrive at the value of plaintiff's land, the inquiry is what it would sell for at a fair sale in the market, without reference to its use for any particular purpose ; the best evidence of market value is the price paid for land in that neighborhood, making allowance for difference in position and improvements." *Held*, that the refusal of the point was proper.

4. The true test of value is the opinion of witnesses in view of location, productiveness and general selling price in the vicinity.

5. A borough plan is evidence to show where the line of a street is ; but not to show whether the plaintiff's house was over the line ; this is to be shown by other evidence.

6. The ties and filling of a railroad are part of an embankment.

7. Improvements which a railroad company propose to make in the future, unconnected with finishing the railway, are not evidence for the company in assessing damages.

8. It was alleged that part of the house of a landowner was over the

street line. ·The court charged " that the true rule was to assess the damages to the property, houses and lots, considering the houses to be on the proper line. *Held* to be correct.

November 5th 1873.    Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.  ·  · ·

Error to the Court of Common Pleas of *Allegheny county :* No. 68, to October and November Term 1873.

The proceeding in this case commenced May 20th 1872, by the petition of August Rose, the owner of certain lots on Manor street, in the borough of Birmingham, for the appointment of viewers to estimate and determine the damages sustained by him in the location, &c., by the Pittsburg, Virginia and Charleston Railway Company of their railroad, by reason of an embankment made in constructing the railway along that street, and to estimate, &c., the value of the petitioner's land taken by the company.

The company was incorporated April 8th 1867, subject to the provisions of the General Railroad Law of February 19th 1849, the 10th section of which amongst other things provides, " That whenever any company shall locate its road in and upon any street or alley, in any city or borough, ample compensation shall be made to the owners of lots fronting upon such street or alley, for any damages they may sustain, by reason of any excavation or embankment made in the construction of such road, to be ascertained as other damages are authorized to be ascertained by this act."

Viewers were appointed, from whose report, made August 24th 1872, the company appealed.    The appeal was tried March 12th 1873, before Stowe, J.

The plaintiff gave evidence, that he was the owner of property 40 feet front on Manor street ; that he had erected a three-storied frame house, and fitted it up for a store six years previously ; he carried on business there, and rented out a frame house which he had on the same ·premises.

The plaintiff then offered " to show that the one and one-half story frame house on one of his lots fronting on Manor street was readily rented by him to tenants before the location and construction of the defendants' road along the said street, but since the excavations and embankments made along said street in the construction of defendants' road, the property is difficult to rent ; and to show that for a portion of the time the property remained uninhabited, it being impossible to procure tenants for the same.    This for the purpose of allowing the jury one means of estimating the damage done to plaintiff."

The defendants objected to the evidence proposed " as tending to consequential damages, and because the only true measure of damages is the difference between the market value of the property before and after the location of the railroad, without reference to

the purpose for which the building had been applied before building the railroad and the intention as to its future enjoyment; and because the plaintiff is not in law entitled to damages resulting from any excavations or embankments which do not change the established grade of the street, and no offer is made to show that the street in question had any established grade."

The evidence was admitted and a bill of exceptions sealed.

The plaintiff gave evidence that he had difficulty in renting this house, and that when rented it was at much lower rates than before. He testified also in detail as to the embankment, wall, &c., placed by the company in the street opposite his house and lot in constructing their road; that its construction interfered much with his business; of the value of his property before and since; that by reason of the embankment and insufficient culverts the rain flooded his cellar; that the great damage to his property was the erection of the embankment. He gave much evidence as to injury done to his property by the railroad; amongst other things, that the rails and ties prevented an approach to his house.

The plaintiff having rested, the defendants read sects. 5 and 6 of Act of March 30th 1838, Pamph. L. 162, extending the limits of the borough of Birmingham, and requiring the burgess and council to make an accurate map of the extension, which should "set forth all streets, squares, lanes and alleys which now are or previously to the making of said map shall have been laid out or appropriated for public use," and the burgess, &c., should cause the map to be recorded in the recorder's office of Allegheny county; and when recorded the streets, &c., should be deemed public highways.

They then called Z. Remington, who testified that he had been employed by the borough of Birmingham; made a plan in accordance with the Act of Assembly and delivered it to the burgess; that the plan showed him on the stand was the one which he had made; that he located the south line of Manor street in accordance with the plan about two years previously, in order to ascertain whether or not Rose's property was on Manor street; he made Manor street 40 feet wide; he was told it was but 33 feet, but 7 feet were added on the other side of the street. According to the plan, "the plaintiff is on Manor street 7 feet 3 inches, and 2 feet at another point." After other evidence by this witness and others bearing upon the location of Manor street in accordance with the map, the defendants offered it in evidence, for the purpose of showing the true location of Manor street, to be followed by evidence that this map had always been the recognised official plan of the borough of Birmingham, and to show that the plaintiff had encroached on the line of Manor street and was maintaining a nuisance on it; and that the injuries he alleged that he had sus-

[Pittsburg, Va. & Ch. Railroad Co. v. Rose.]

tained from the embankment, &c., would not exist if he were on the proper line of the street.

The plaintiff objected to the offer; it was rejected, and bill of exceptions was sealed.

They gave other evidence that the house of the plaintiff encroached several feet on Manor street; also that the street had been very irregular and in a bad condition until it had been graded by the defendants, and that if the railroad tracks were filled up it was not in a worse condition than it had been.

J. M. Byers, the chief engineer of defendants, testified that the embankment had not been quite completed at the end of a stone walk built at the head of a cross street (7th street), that was there to be graded off so that wagons could get up, and that the grade at 7th street was about what it had been before the railroad was built.

The defendants then offered a plan showing the boundary of the borough of Birmingham, as made for the borough under the extension authorized by the Act of Assembly, in connection with the evidence of Remington, that it had been made by him at the instance of the borough authorities, showing the lines of Manor street when the plan was made, and that the plan has been the recognised official plan: for the purpose of showing that the property alleged by plaintiff to have been injured never was his property but a portion of Manor street.

The offer was objected to by the plaintiff.

The court said : " We think that the plan in connection with the evidence of Remington is proper to go to the jury for the purpose of showing where the south line of Manor street is and was when the same was made, as shown by the actual location of street on the ground at that time. But in no other respect do we think it is competent to go to the jury. It is admitted for that purpose alone."

The court sealed a bill of exceptions for the defendants.

The defendants gave other evidence for the purpose of showing that the plaintiff was not injured, and generally in answer to the plaintiff's case.

The following are points of the defendants with their answers :—

3. In arriving at the value of plaintiff's property the jury are to inquire simply what the property would sell for at a fair, open sale in the market, without reference to its being used for any particular purpose, and that the best evidence of market value is the price actually paid for land in that neighborhood, making due allowance for difference in position and improvements.

" Refused. We cannot say that an actual sale is the *best* evidence of the market value of lands. That it is some evidence when taken in connection with the opinion of witnesses as to the market value as the basis of it, is true, but when standing *alone* by

itself is of no value, because it does not disclose the public and general estimate which, in cases like this, is a test of value."

5. If the jury believe from all the evidence in the case, that the plaintiff's houses encroached on Manor street (to the extent of seven feet or more), then, as a matter of law, said houses are a public nuisance and liable to removal at any time, and the jury cannot in their estimate of value include the price of said houses, nor allow plaintiff anything for damages resulting thereto.

" Refused. The true rule is to estimate the damages to the property—houses and lots—taking and considering the houses to be on the proper line of the street."

6. The map made by Remington, showing the south line of Manor street, offered in evidence in this case, being made in pursuance of the Act of Assembly recited and offered in evidence, and on record since 1839, is conclusive as to the location of the south line of Manor street, in the absence of any record evidence showing another location of said line, and if the jury believe that the plaintiff's houses encroach on Manor street as defined by said map, the plaintiff cannot recover any damages for injuries resulting to the houses built on the street.

" Refused."

The following are points of the plaintiff which were affirmed:—

4. In determining the damage, if any, sustained by the plaintiff as owner of lots on Manor street, the jury may take into account the ties used by defendants' company in the construction of their said railway in front of plaintiff's property, and the ballasting or filling in, between the same.

6. In arriving at the estimate of damages, if any, suffered by embankment made by the defendant, in the construction of their railway along said street in front of plaintiff's lots, they are to consider the embankment as it now exists, without reference to the improvements proposed by the company in grading and improving the street unconnected with the finishing of their railway.

The verdict was for the plaintiff for $1029.16.

The defendants took a writ of error ; they assigned for error :

1. Admitting the evidence as to the renting of the small storehouse.

2. The answer to the defendant's 3d point.

3, 4. The rulings of the court on the offers of evidence of the plan of the streets in the borough of Birmingham.

5, 6. Affirming the 4th and 6th points of the plaintiff.

7. The answer to the defendant's 6th point.

8. Refusing the defendant's 6th point.

*J. Dalzell* (with whom was *J. H. Hampton*), for plaintiffs in error.—The grade of Manor street was irregular before the railroad was constructed ; grading it to a level, was not " embankment "

[Pittsburg, Va. & Ch. Railroad Co. *v.* Rose.]

and " excavation," for which damages can be assessed within the meaning of the Act of Assembly; it was as if the grading had been done by the borough authorities: Callender *v.* Marsh, 1 Pick. 430; O'Connor *v.* Pittsburg, 6 Harris 187. The borough map was evidence of the line of Manor street: 1 Phil. Ev. 236, 237: Commonwealth *v.* Alburger, 1 Whart. 473; Birmingham *v.* Anderson, 4 Wright 506. The house was a nuisance in the street and might be abated: Moyamensing Com. *v.* Long, 1 Parsons 145. Lapse of time furnishes no defence for an encroachment on a public right; such as the erection of an obstruction on a street or public square: Commonwealth *v.* Alburger, 1 Whart. 486; Commonwealth *v.* McDonald, 16 S. & R. 390; Rung *v.* Shoneberger, 2 Watts 23; Barter *v.* Commonwealth, 3 Penna. Rep. 253; Penny Pot Landing, 4 Harris 79; Philadelphia *v.* R. R. Company, 8 P. F. Smith 253; Harvey *v.* Lackawanna & B. R. R., 11 Wright 436.

The measure of damages in cases such as this, is the same as in cases where land is actually taken: Thoburn's Case, 7 S. & R. 411; Harvey's Case, 11 Wright 434; Hornstein *v.* R. R. Co., 1 P. F. Smith 90.

In arriving at the value of plaintiff's property the jury are to inquire simply what the property would sell for at a fair, open sale in the market, without reference to its being used for any particular purpose, and that the best evidence of market value is the price actually paid for land in the neighborhood, making due allowance for difference in position and improvement: Searle *v.* Lackawanna & Bloomsburg R. R. Co., 9 Casey 57 ; Schuylkill Nav. Co. *v.* Farr, 4 W. & S. 375; Furman Street, 17 Wendell 649; Watson *v.* Pitts. & C. R. R. 1 Wright 477; Worthen *v.* Wilmot, 30 Vermont 555.

*D. T. Watson* (with whom was *D. H. Veech*), for defendant in error.—Loss of rent is an element of damage: Railroad *v.* Stauffer, 10 P. F. Smith 387. The company was bound by the width of the street as opened : Furniss *v.* Furniss, 5 Casey 17 ; McMurtrie *v.* Stewart, 9 Harris 322 ; Schuylkill Co.'s Appeal, 2 Wright 459.

The opinion of the court was delivered, Nov. 10th 1873, by

SHARSWOOD, J.—In the court below this was an appeal from a report of viewers appointed upon the petition of August Rose, to assess the damages to his property arising from the construction of their railroad by the plaintiffs in error. The road did not take any part of the petitioner's land, but was constructed along a public road or street in the (then) borough of Birmingham. The provision of the tenth section of the General Railroad Law, Act of February 19th 1849, Pamph. L. 83, which relates to this controversy, is, " that whenever any company shall locate its road in and upon any street or alley in any city or borough, ample compensation

[Pittsburg, Va. & Ch. Railroad Co. *v*. Rose.]

shall be made to the owners of lots fronting upon such street or alley, for any damages they may sustain by reason of any excavation or embankment made in the construction of such road, to be ascertained as other damages are authorized to be ascertained by this act." That such an embankment was made directly in front of the petitioner's property, is not a fact in dispute, and the jury were confined by the learned judge below to the damages sustained in consequence of such embankment, a ruling which could not be a subject of complaint upon this writ of error. We will proceed to consider the several errors which have been assigned.

The first assignment is to the admission of the learned judge of evidence to show, that since the construction of the road there had been difficulty in renting the plaintiff's property, and that for a portion of the time it had remained uninhabited, it being impossible to procure tenants for the same. The objection raised to this offer was that it tended to the allowance of consequential damages, and because the only true measure of damages in law is the difference between the market value of the property before and after the location of the railroad, and this without reference to the purpose to which the property was applied before the building of the railroad, or the intention of its owners as to its future enjoyment. A further objection was made because the plaintiff was not in law entitled to damages resulting from any excavations or embankments which did not change the established grade of the street, and no offer was made to show that the street in question had an established grade. These objections were overruled by the learned judge and the testimony admitted. In this we think there was no error. Admitting the rule for the measure of damages, as stated, to be the correct one, there are many different ways by which the market value of property may be ascertained. It may be by the opinion of witnesses derived from actual sales in the neighborhood, but this certainly is not the only way. There may be few or no such actual sales before and after the alleged injury upon which to found such opinion. Surely the decrease in the rental of the property, or the impossibility of procuring constant tenants, arising from the inconveniences to which such tenants are subjected from the injury complained of, is an element in determining the difference in the value, very proper to be submitted to the consideration of the jury. How far it had resulted from the embankment, and how far from the other inconveniences caused by the construction of the road, excluded from the consideration of the jury in this case, was to be determined by them under the instruction of the court. The same objection would lie to direct evidence of the difference in market value. It was clearly not necessary for the plaintiff to show an established grade. It would follow that if a plaintiff had built his house upon a street which the borough had neglected or refused to grade, that he could

[Pittsburg, Va. & Ch. Railroad Co. v. Rose.]

recover no damages.   It was for the defendants to show that there
was an established grade to which their road conformed, if the
fact was so.

The second assignment of error is to the refusal of the learned
judge to affirm the third point submitted by the defendants below.
There was no error in this refusal.   It asked the judge to charge,
that in arriving at the value of plaintiff's property the jury are to
inquire simply what the property would sell for at a fair open sale
in the market, without reference to its being used for any particu-
lar purpose, and that the best evidence of market value is the price
actually paid for land in that neighborhood, making due allowance
for difference in position and improvement.   Passing by the ques-
tion whether the use to which a property has been applied, when
that use is prevented or injured by the embankment, might not
properly be considered, it is clear that the judge could not be re-
quired to instruct the jury that a sale of land in the neighborhood
is the best evidence of market value.   The selling price of land
in the neighborhood is undoubtedly a test of the value : Searle v.
Lackawanna & Bloomsburgh Railroad Company, 9 Casey 57 ;
East Pennsylvania Railroad Company v. Hiester, 4 Wright 53.
But that is very different from the price paid for any particular
property or properties.   The true test is the opinion of witnesses
in view of location, productiveness and the general selling price in
the vicinity.   Market value depends upon the judgment of the
community, and a consideration of particular sales would lead to
collateral issues as numerous as the sales.

The third and fourth assignments may be disposed of together.
When the plan of the borough of Birmingham was first offered it
was rejected by the learned judge, but this error, if it was one,
was corrected, and the plan subsequently admitted.   It is com-
plained that the admission was restricted to the purpose of showing
where the south line of Manor street is and was when the plan
was made.   It is not easy to perceive for what other purpose it
was competent.   Whether the plaintiff's property was on or over
the line, the plan was incompetent to show.   That must be made
out by other testimony.   There was nothing in this ruling to pre-
vent the defendants from offering such other testimony.

The fifth assignment is that the court affirmed the fourth point
of the plaintiff below—that the jury might take into consideration
the ties used by the defendants in the construction of their railway
in front of the plaintiff's property, and the ballasting or filling in
between the same.   There was clearly no error in affirming this
point.   The ties and filling in were surely a part of the embank-
ment, the height of which was just that much increased by them.

Nor was there any error in affirming the plaintiff's sixth point,
as complained of in the sixth assignment.   What the railway com-
pany might propose thereafter to do in the way of improvements,
24 P. F. SMITH—24

unconnected with the finishing of their railway, was clearly not a matter to be considered in determining the damages. The embankment was made and the railway finished. The company might or might not, according to their pleasure, carry out their proposed improvements, and if the damages were reduced on account of them, and the company should afterwards fail to carry them out, it is manifest that the plaintiff would be remediless.    .

As to the seventh assignment, it cannot be contended, and has not been here, that the plaintiffs in error were entitled to an affirmance of their fifth point as it was presented. Had the learned judge simply refused to affirm it, no question could have been made about it. The plaintiff by having built his house over the line of the street did not thereby forfeit all claim to recover damages. All that could be claimed was that he was precluded from damages to so much of his building as had encroached upon the public highway. "The true rule," said the court, "is to estimate the damages to the property, houses and lots, taking and considering the houses to be on the proper line of the street." It is impossible that any reasonable jury could have construed this to be an instruction that in point of fact the houses were on the proper line. The main part of the evidence admitted and heard was as to the question of fact, what was the proper line of the street, and whether the houses were over it. The instruction, therefore, evidently was, if you believe that the houses did encroach upon the street, do not, as the defendant's point has stated, allow the plaintiff no damages at all, but only such as he would suffer if his houses were on the proper line.

The eighth assignment of error is in refusing to affirm the sixth point of the defendant below, that the map of Remington was conclusive of the line, and if the jury believe that the plaintiff's houses encroached on Manor street, as defined by said map, the plaintiff could not recover any damages for injuries resulting to houses built on the street. Without inquiring whether the map in question was such an official plan as was sufficient to fix conclusively the line of the street as between the plaintiff and defendants, it is manifest that the point was too broad, as it did not distinguish between so much of the houses as encroached on the street, and so much as were within its line. A house is built on a street when it is built on the line of it, in common as well as legal language. There was no error, therefore, in this refusal.

Judgment affirmed.