# Rea *v.* Pittsburg & Connellsville Railroad Company, Appellant.

*Eminent domain—Railroads—Compensation for delay—Excessive verdict—Act of May 20, 1891, P. L. 101.*

1. In a proceeding brought to recover compensation for land appropriated by a railroad company the action of the trial judge in submitting to the jury under proper instructions the right of the plaintiff to compensation for delay will not be reversed on appeal where it appears that the railroad company took actual possession of the land in 1903 and enjoyed it for that time on, that at the trial the highest value claimed by the plaintiff was $12.00 a square foot and the jury was not asked for a verdict of more than $9.00 a square foot; that the defendant in its plea declared the land to be of a value of only $1.00 per square foot and gave testimony of a value of less than $3.00 a square foot; that the jury rendered a verdict of $7.00 per square foot and that all of the seven years' delay, excepting two months, occurred subsequent to appeals by both parties from the award of the viewers.

2. The power conferred upon the Supreme Court by the act of May 20, 1891, is never exercised on the plea of the excessiveness of the verdict except in a most extreme case.

*Evidence—Eminent domain—Real estate—Value—Price paid—Cross-examination—Discretion of the court—Sale of adjacent property—Value of improvements.*

3. While a consideration of particular sales in the neighborhood as fixing market value will not be allowed in condemnation proceedings, questions as to such sales are proper in the cross-examination of a witness to test his accuracy and the extent of his knowledge.

4. The rule that evidence in chief of particular sales is incompetent, does not apply to the admission of testimony concerning a single sale of the very property in issue, provided that the sale is not too remote from the date of the appropriation.

5. Where one of the claimants for damages for the taking of property testifies that the land was worth a certain price per square foot, it is proper cross-examination to ask him about the price paid for the same property three years before, for the purpose of testing his com-

petency and credibility; and the refusal to admit such a question constitutes reversible error on appeal where it appears from the record that the trial judge did not reject the testimony in the exercise of a proper discretion based on the peculiar facts of the case but rather because he considered it not proper cross-examination.

6. Where, in a condemnation proceeding the price paid in a sale of adjacent property figures largely with the witnesses as a standard of value of real estate in its vicinity, and plaintiff's witnesses fix the value of the improvements on the property sold at a very low figure, which proportionately increases the value of the lot, it is error to reject defendant's offer to prove the fair value of the improvements at the time of the sale.

7. Although the market value of land is not a question of science and skill upon which only an expert can give an opinion, yet in each case the trial judge should see to it that every witness called to prove value has a proper foundation of knowledge to make his opinion of some real worth, before admitting it as evidence.

8. In large cities "neighborhood" is a relative term, and the field which a witness may take into consideration in forming an opinion of the selling price of land in the vicinity of a particular property, should not only be reasonably adjacent thereto, but it should be of the same general character as the immediate locality in which such property is situated; otherwise the opinion is of little value.

Argued May 11, 1910. Appeal, No. 10, Oct. T., 1910, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1903, No. 453, on verdict for plaintiffs in case of Henry B. Rea et al., Executors of Henry Rea, Jr., deceased, *v.* Pittsburg & Connellsville Railroad Company. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Appeal from the award of viewers. Before McFAR-LANE, J.

The facts appear in the opinion of the Supreme Court.

When A. U. Bean, a witness for plaintiffs, was on the stand, objection was made as follows:

Counsel for defendant object to the competency of this witness for two reasons. He has not shown that he knows of a sale in the neighborhood of this property east of the Panhandle railroad, except two cases. The sales that he mentions, he shows no personal information of,

and they all lie west of the Panhandle railroad, clear down to Cherry alley, on Fourth, Third, Second and First avenues. This is property of a different class than this property beyond the Panhandle railroad, accessible as the Rea property is only through little, narrow Try street. The witness has testified that he has taken his valuations from the deeds recorded in the recorder's office, and is without personal knowledge as to the particulars of any one of the transactions mentioned.

The Court: Objection overruled and bill sealed for defendant. [4]

"Q. What is your judgment as to the fair market value of this property in March, 1903? A. Taking it as a whole, about $845,000. That includes ground and buildings. In other words, it is $792,000 for the ground and $53,000 for the buildings. Q. That is how much a square foot for the ground? A. That is $9.00 a square foot for the ground." ·

Counsel for defendant offer on cross-examination to show by the witness the plaintiff, for the purpose of testing the credibility of his testimony and the competency of his knowledge as to the value of this property in March, 1903, the fact that his father purchased the property appropriated by the railroad company, in question in this case, in the month of June, 1900, from the Consolidated Gas Company; that the said company had it upon the market for a number of years for sale, and was able to hold the property until it realized the fair market value of the same, and the price at the date of such purchase for which the Consolidated Gas Company sold the property to the witness's father. And also to show that there was no such increase in the market value of the property between June, 1900, and March, 1903, as would be indicated by the price paid for the property in June, 1900, and the estimate now given by the witness of its market value in March, 1903.

Objected to as not cross-examination, immaterial, irrelevant and incompetent.

Objection sustained and bill sealed for defendant. [12]

I offer to prove by the witness on the stand that his father, Henry Rea, Jr., purchased the piece of property in question in this suit in connection with another piece lying between Greenough street and Second avenue in June, 1900; that the witness on the stand has knowledge of the price which his father paid for the property; that the property previous to its purchase by Henry Rea, Jr., was owned by the Consolidated Gas Company and had been held by that company for a number of years in the market for sale; that the Consolidated Gas Company had during these years in which it held the property for sale been attempting to sell it and was able to hold it until it could secure a satisfactory price, and that at the time named the Consolidated Gas Company sold it to Mr. Rea, and the price at which the sale was made, the amount of money paid for said property; to be accompanied by evidence that there was no rise in the market value of the property between the date of said purchase and the date of the appropriation by the railroad company, as would be indicated between the price paid for the property in June, 1900, and the amount claimed therefor by the present plaintiff; this for the purpose of giving to the jury information tending to show the market value of this property at the time of the appropriation in March, 1903.

Objected to as incompetent and irrelevant.

Objection sustained. [13]

Defendant presented this point:

It appearing from the evidence and the record in the cause, that at the hearing before the viewers appointed to assess the damages to be paid by the railroad company for the property in question in this cause, which hearing was held April 22, 1903, Henry B. Rea, one of the present plaintiffs, was called on behalf of the claimant and examined by his counsel and testified that in his judgment the market value of the property was $15.00 a square foot, or a total valuation of $1,320,000; and that the

viewers awarded to the claimant the sum of $416,000, as representing full compensation to the claimant for the amount of damages sustained; and further, it appearing from the evidence and the record in the cause, that at the previous trial of the case on appeal from the award of viewers, the said Henry B. Rea, one of the plaintiffs, was called in his own behalf and on behalf of the other plaintiffs, and upon examination by his counsel testified that the market value of the property in question was the sum of $12.00 per square foot, or a total valuation of $1,056,000, and that the verdict of the jury at the said trial was $616,000 principal, and $159,133.33 damages for detention in payment, and that the claim of the said plaintiffs from the time the cause was heard before the viewers, continued through the previous trial of the case, was grossly exorbitant, and of such a character that the defendant had the right to resist, and the presentation of such claim by the plaintiffs, with the delays incident to litigating, was solely the fault of the plaintiffs in making such an exorbitant demand, and, therefore, as matter of law, the jury cannot, in the making of their verdict in the present trial, award any damages against the defendant for or on account of delay in payment of the just compensation to which the plaintiffs may be entitled. *Answer:* Refused without reading. [1]

*Errors assigned* were (1) above instruction, quoting it; (3) that the judgment was grossly excessive; (4, 12, 13) rulings on evidence, quoting the bill of exceptions.

*Johns McCleave,* with him *Clarence Burleigh* and *Owen S. Cecil,* for appellant.—The defendant was not properly chargeable with compensation for delay of payment upon the valuation fixed by the jury: Phila. Ball Club, Ltd., v. Phila., 192 Pa. 632; Stevenson v. Coal Co., 203 Pa. 316.

The question as to plaintiff's knowledge of the price paid by his father three years before was proper cross-

examination: Davis v. Penna. R. R. Co., 215 Pa. 581; Ham v. Salem, 100 Mass. 350; Re Department of Public Works, 53 Hun, 280; Guyandotte Valley Ry. Co. v. Buskirk, 39 Am. & Eng. R. R. Cases (N. S.), 317; St. Louis & San Francisco R. R. Co. v. Smith, 42 Ark. 265.

Defendant should have been permitted to show the character and value of the improvements on the lot used as a basis of value by all plaintiff's witnesses: Henkel v. Terminal R. R. Co., 213 Pa. 485.

*William B. Rodgers*, with him *Gordon & Smith*, for appellees.—A verdict will not be reversed on the ground that it is excessive unless it is so grossly so as to shock the court's sense of justice: Smith v. Times Pub. Co., 178 Pa. 481; Stauffer v. Reading, 208 Pa. 436; Quigley v. Penna. R. R. Co., 210 Pa. 162; Murtland v. English, 214 Pa. 325; Harrisburg, etc., Turnpike Road Co. v. Cumberland County, 225 Pa. 467.

The question of whether or not damages were to be allowed for delay was properly for the jury: James v. West Chester Boro., 220 Pa. 490.

Evidence of the sale price three years previous was properly excluded: Com. v. Pittsburg & Connellsville R. R. Co., 58 Pa. 26; Mifflin Bridge Co. v. Juniata County, 144 Pa. 365; Schuylkill Nav. Co. v. Farr, 4 W. & S. 362; Davis v. Penna. R. R. Co., 215 Pa. 581; Schonhardt v. Penna. R. R. Co., 216 Pa. 224.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1910:

The plaintiffs claimed compensation for 88,000 square feet of land lying between Greenough street and the yard tracks of the defendant railroad in the city of Pittsburg appropriated by the defendant company in March, 1903. Viewers were appointed April 13, 1903, and awarded $416,000, from which award both sides appealed. The appeals were tried May 4, 1908, and resulted in a verdict for $775,133.33, which the parties agree was composed of $616,000 principal and $159,133.33, compensation for de-

lay in payment. On motion of the defendant the court below granted a new trial, without indicating its reason for so doing. At the retrial on April 5, 1909, a verdict was rendered for $765,893.33, which the parties agree was made up, $616,000 principal and $149,893.33, compensation for delay. Defendant's motion for a new trial was refused, and it has appealed.

The first question we have to consider is whether the defendant was properly chargeable with compensation for delay. The defendant claims that this case is governed by the rule in Phila. Ball Club v. Phila., 192 Pa. 632, and Stevenson v. Coal Co., 203 Pa. 316, to the effect that where the delay is due to the unconscionably high demands of the claimant no such compensation should be allowed. The facts at bar are quite different from those in the cases relied upon by the defendant. There was no actual taking of property in either of those cases. The ball club case was an instance of a change of grade. A claim for $85,000 was "sought to be supported by theories and testimony of an illegitimate character," and a verdict obtained for $29,000 was reversed. On a new trial "other theories and testimony were set up in support of a demand for $62,000, quite as indefensible and unreasonable as the demand in the first trial," and a verdict for $39,000 was cut by the court below to $30,000. But the trial judge had instructed the jury, "You must add to the damages which the plaintiff has suffered reasonable compensation for the detention of those damages." We said it was manifest that "the oppressive and unreasonable demands of the plaintiff" caused the delay, and reversed, holding that the plaintiff was not entitled to any damages on that score. The Stevenson case was an action of trespass to recover damages for the pollution of a stream with coal dirt, and this court characterized the plaintiff's claim as "extortionate, unconscionable and incredible."

In the present case the defendant company took actual possession of the plaintiff's property in 1903, and has ever since enjoyed whatever revenues there were to be

derived therefrom. At the trial the highest value claimed by the plaintiff was $12.00 a square foot, and the court below states in its opinion refusing a new trial that the jury were not asked for a verdict of more than $9.00 a square foot. The defendant in its plea declared the land only to be of a value of $1.00 per square foot, and gave testimony of a value of less than $3.00 a square foot. The jury rendered a verdict of $7.00 a square foot. Both parties appealed from the award of the viewers and all of the seven years' delay, excepting two months, occurred subsequent to these appeals. In his instructions to the jury the trial judge said: "It is for you to say in the exercise of your sound discretion whether the parties are entitled to compensation for delay in receiving their money. That amount you may give or you may not, just as you conclude . . . . remembering that as a general principle where there has been delay which is not the fault of the plaintiff, and he has been kept out of his money, for the time lost the jury could give compensation by way of damages. But on the other hand, if it is the plaintiff's fault and the plaintiff's own conduct caused the delay, there can be no compensation by way of damages. . . . When you have fixed the market value at so much a foot, compare that with Mr. Rea's price, and if you are fairly of the opinion and come to a fair and honest conclusion that the difference between the price you fix and the valuation placed by Mr. Rea was so great that you would say that it was an extortionate demand, that it was an inordinate demand, so that the officers of the railroad company were justified in contesting . . . . then it would be your duty, and I so instruct you, to refuse to give any damages for delay in payment. . . ." And after referring to the testimony, the charge continued: "But if . . . . this was merely an honest difference of opinion . . . . you could give compensation for delay." These instructions are practically in accord with those approved by us in the case of James v. West Chester Boro., 220 Pa. 490, and with the rule laid

down in the cases relied upon by the defendants. It could not be said by the trial judge that the delay was due entirely to the size of the demands made by the claimants. The record shows no offer of settlement at any figure, nor do we find any indication therein that reasonably lower demands would have met with payment. The court left the question squarely and fairly to the jury, and we cannot say that there was any error in so doing. In addition to this, the court could not have affirmed the request covered by the first assignment of error, for it states that Henry B. Rea testified before the viewers that the market value of the property was $15.00 a square foot. As pointed out by the trial judge in his charge, Mr. Rea denied this fact, claiming that he had merely said, "it was worth that to us." The assignment is overruled.

Although it well may be contended that the verdict approaches the verge of excessiveness, this is not a case which moves us to interfere under the Act of May 20, 1891, P. L. 101. The power conferred upon this court by that act has never been exercised on the plea of the excessiveness of the verdict, except in a most extreme case: Stevenson v. Coal Co., 203 Pa. 316. The question of the amount of the verdict is ordinarily for the court below, and where a grossly excessive amount is returned the trial court should never allow it to stand, no matter how many new trials it may be obliged to grant. The third assignment of error is overruled.

The plaintiffs offered in evidence for the purpose of proving title the deed of the Consolidated Gas Company to Henry Rea, Jr., dated June 21, 1900, showing a consideration of $140,000 paid by the grantee. When Henry B. Rea, one of the claimants, was upon the stand he testified that the value of the property was $12.00 a square foot, which would give a total of $1,056,000, and under cross-examination he was asked, "In June, 1900, what did you or your father pay for this property?" This was objected to, and the objection was sustained.

The record then discloses that "Counsel for defendant offer on cross-examination to show by the witness for the purpose of testing the credibility of his testimony and the competency of his knowledge as to the value of this property in March, 1903, the fact that his father purchased the property appropriated by the railroad company in question in this case in the month of June, 1900, from the Consolidated Gas Company; that the said company had it upon the market for a number of years for sale, and was able to hold the property until it realized the fair market value of the same, and the price at the date of such purchase for which the said Consolidated Gas Company sold the property to the witness's father. Also to show that there was no such increase in the market value of the property between June, 1900, and March, 1903, as would be indicated by the price paid for the property in June, 1900, and the estimate now given by the witness of its market value in March, 1903." An objection to the offer was sustained. The defendant made practically the same offer in its case in chief, and this was refused. These rulings are assigned for error. The offers as a whole were properly refused. They contain too many points collateral to the main one sought to be proved, and the proffered evidence was not part of the defendant's case in chief.

But after serious consideration we have reached the conclusion that under the peculiar facts of this case the question as to the purchase price of the property in June, 1900, was proper cross-examination and should have been allowed. In Davis v. Penna. R. R. Co., 215 Pa. 581, we said: "But after a witness has testified in chief . . . . the largest latitude should be allowed on cross-examination. . . . In fact, any and every pertinent question may be put to him on cross-examination which will enable the jury to place a fair estimate on his testimony as to the damages sustained by the plaintiff by the construction of the road through the latter's premises. The learned judge in his rulings failed to observe the difference between the

well-recognized measure of damages in such cases and the right of defendant's counsel to cross-examine the plaintiff's witnesses so as to enable the jury to give due weight to their testimony." It has been held in Pennsylvania from an early date that a consideration of particular sales in the neighborhood as fixing market value will not be allowed: Pittsburg, etc., R. R. Co. v. Patterson, 107 Pa. 461. But as early as 1861, in East Penna. R. R. Co. v. Hiester, 40 Pa. 56, we said on this subject: "The question might be proper by way of cross-examination to test the accuracy of the witness;" and in Becker v. P. & R. R. R. Co., 177 Pa. 252, "Of course, such evidence may be brought out by the cross-examination of witnesses;" in Henkel v. Terminal R. R. Co., 213 Pa. 485, "The good faith of a witness and the accuracy and extent of his knowledge may be tested by questioning him as to particular sales, to ascertain whether he knew of and considered them in forming an opinion. These inquiries go directly to the value of the opinion expressed;" in Gorgas v. Phila., H. & P. R. R. Co., 215 Pa. 501, "The witness may be asked in cross-examination as to his knowledge of particular sales and the prices asked for property in the community for the purpose of testing his competency to testify; but such evidence in chief is clearly incompetent;" in Schonhardt v. Penna. R. R. Co., 216 Pa. 224, "Where the witness has testified to value, his good faith and accuracy and the extent of his knowledge may be tested on cross-examination by questioning him as to particular sales of property similarly situated to ascertain whether he knew of them and considered them in forming an opinion." The objection to the admission of testimony of particular sales is placed upon the theory that it would lead to the investigation of "collateral issues as numerous as the sales:" Pittsburg, etc., R. R. Co. v. Rose, 74 Pa. 362. It is plain that this does not apply to the admission of testimony concerning a single sale of the very property in controversy.

If a claimant who has expressed an opinion on the value

of his own property may be asked concerning sales of other properties in the neighborhood, for the purpose of testing his good faith, the question presents itself, why may he not be asked as to a sale of his own property, provided the sale in question is not too remote from the date of the appropriation. Surely in a case like the present where there is evidence showing prima facie a purchase price of $140,000, and the witness claims a value of $1,056,000, or an increase of over 650 per cent in two years and eight months, such an inquiry is relevant to test his "good faith," if for no other reason; subject of course to his right to prove any relevant explanatory facts: Sanitary District of Chicago v. Pearce, 110 Ill. App. 592; St. Louis & San Francisco R. R. Co. v. Smith, 42 Ark. 265; Ham v. City of Salem, 100 Mass. 350. In many jurisdictions evidence of this character is considered directly pertinent on the question of value: St. Louis & San Francisco R. R. Co. v. Smith, 42 Ark. 265; Guyandotte Valley Ry. Co. v. Buskirk, 39 Am. & Eng. Railroad Cases (N. S.), 317; In re Department of Public Works, 53 Hun, 280; Enterprise Lumber Co. v. Porter, 46 So. Repr. 773; New Orleans, etc., R. R. Co. v. Barton, 43 La. Ann. 171; Cobb v. City of Boston, 109 Mass. 438; Indianapolis & Cin. Traction Co. v. Shepherd, 35 Ind. App. 601; Ham v. City of Salem, 100 Mass. 350; Peabody v. New York, N. H. & Hartford R. R. Co., 187 Mass. 489; Lanquist v. City of Chicago, 200 Ill. 69; Sanitary District of Chicago v. Pearce, 110 Ill. App. 592; Swanson v. Keokuk & Western R. R. Co., 116 Iowa, 304. But it is not necessary to go so far in the present case, for the defendant here sought to have the testimony admitted as proper cross-examination.

We have examined the cases called to our attention by counsel for the plaintiff, and we find nothing in them which necessarily excludes the question on cross-examination. Schuylkill Navigation Co. v. Farr, 4 W. & S. 362, was an action to recover damages for injuries to a grist-mill and furnace caused by the raising of a dam. The plaintiffs sought to introduce into their testimony in chief evidence

of the amount of money expended in the erection of a furnace which they claimed had been rendered useless. We said: "If the measure of damages is the injury done to the property estimated by its decreased value, then it is plain that the defendants cannot be made to pay the expenses of erecting the furnace, which may have exceeded the real value of the property." There is nothing in this case on the question of the right of cross-examination. Commonwealth v. Pittsburg & Connellsville R. R. Co., 58 Pa. 26, was a proceeding by the state to take the franchise and property of the defendant company under an act of assembly which provided that as full compensation the company should be entitled to receive payment for expenditures made in connection with work or construction upon its road. We held this rule of valuation to be inadequate and unjust, and in so doing Mr. Justice SHARSWOOD said by way of illustration: "It would be no just compensation to an individual to pay him for his land and improvements merely what they had cost him. Their value may have been doubled in the lapse of time and by the change of circumstances." This is quite true as a general proposition, the application of which would depend upon the facts in each particular case; but it has no relevancy to the question we have under consideration.

Mifflin Bridge Co. v. Juniata County, 144 Pa. 365, was a proceeding to condemn the bridge and the franchise of the owning company. A witness who had taken the contract for the erection of the bridge was called by the company and asked the value of the structure. This was objected to on the ground that he should have been asked the contract price. We held that the objection was not well taken, and said, "The true question was the value of the bridge, not what it cost. The contractor may have taken it at too low a figure, or the owner may have paid too much. The county is entitled to pay for it at its actual value at the time of taking." So many elements enter into the contract price of a

bridge, dependent upon the cost of materials and labor at the time of its construction, the competition in the letting of the contract, and a hundred and one other things, that the price paid would be a most uncertain guide. This case must be taken on its own facts, and has no controlling force on the question before us. In Davis v. Penna. R. R. Co., 215 Pa. 581, an effort was made to show the price which the claimant had paid for his farm seventeen years prior to the appropriation. We said: "Such evidence would have given the jury no proper estimate of its value immediately before the taking by the railroad." The time was too remote. In Schonhardt v. Penna. R. R. Co., 216 Pa. 224, counsel for the defendant proposed to ask the plaintiff on cross-examination what the two adjoining properties sold for within the past two years, "for the purpose of having the testimony go to the jury on the question of the value" of the plaintiff's property. We said: "The offer was properly rejected. . . . It is within the limits of proper cross-examination to show that the witness is unfair or that his opinion is founded on a misapprehension of facts, but it is not proper under the guise of cross-examination to develop as affirmative evidence of value facts that neither party could have shown in chief." Here one of the avowed purposes was to have the testimony go to the jury on the question of value, not to test the credibility or good faith of the witness. Of course, under our authorities, the offer was rejected. These are the only cases approaching the point under investigation to which we have been referred.

In East Brandywine & Waynesburg R. R. Co. v. Ranck, 78 Pa. 454, the defendant proffered evidence that the plaintiff had offered to sell his farm for a certain price, and the rejection of this evidence was assigned for error. In reversing we said: "While the evidence referred to was not conclusive, nor perhaps very important, it ought not to have been excluded." The fact that the plaintiff had offered to sell his farm at a

certain price did not fix its value, but under the circumstances of that case we viewed it as some evidence to go to the jury; and so under the circumstances of this case, while the testimony sought to be elicited by the question propounded to the claimant concerning the price paid for the land would not fix the value of the property, it would be some evidence to be considered in weighing his opinion as to its value: Kentucky & Indiana Bridge Co. v. Held, 16 Ky. Law Rep. 160; Rosenstein v. Fairhaven & Westville R. R. Co., 78 Conn. 29. Where such testimony is offered the question of its acceptance or rejection will necessarily depend upon the circumstances in each particular case, the disparity between the price paid and the value claimed, the length of time between the sale and the appropriation, and other elements which may present themselves tending to show the worth of the testimony as evidence affecting the importance, and throwing light upon the accuracy and good faith, of the opinion expressed by the witness. Therefore the question will always be one for the exercise of discretion on the part of the trial judge. But in the present case the record indicates that the trial judge did not reject the testimony in the exercise of such discretion, but rather because he considered it not proper cross-examination. We are of opinion that it was proper cross-examination and should have been admitted. We overrule the twelfth and thirteenth assignments of error and sustain the eleventh.

The market value of a particular piece of real estate is to be measured by the price usually given for such property in that neighborhood, "making due allowance for differences of position, soil and improvement:" Searle v. Lack. & Bloomsburg R. R. Co., 33 Pa. 57. In Henkel v. Terminal R. R. Co., 213 Pa. 485, we said: "We see no reason why a party against whose interest a witness has testified may not show that the opinion expressed is valueless as evidence because it is founded on a misapprehension of the facts. . . . This does not

lead . . . . to the trial of collateral issues. It goes only to impair the value of an opinion which has become evidence in the case by showing it is based on a misapprehension of the real facts." In the case at bar the price paid in the sale of a property known as the Klondike Warehouse figured very largely with nearly all of the witnesses as a standard of value of real estate in the vicinity. In the examination of witnesses counsel for the plaintiff called attention to the fact that this sale was the nearest in locality to the plaintiff's property, and he examined the owner of this Klondike property with great particularity concerning the sale. Both counsel for plaintiff and defendant interrogated witnesses regarding the value of the buildings as distinguished from the value of the property as a whole, and in this way they derived the square foot value of the land. Plaintiff's witnesses fixed the value of the improvements at a comparatively low figure, which of course proportionately increased the value of the lot. The defendant's offer to prove the fair value of the buildings at the time of the sale was rejected, and counsel contends that had this testimony been admitted it would have shown the improvements to have been worth at least double the value placed on them by certain of the plaintiff's witnesses; which well might have materially affected the value of the opinion expressed by these witnesses. On this state of facts we are of opinion that the testimony should have been received. The fourth assignment of error is sustained.

It becomes unnecessary for us to pass upon the remaining assignments of error. To enter upon a discussion of those which question the competency of certain of the witnesses called by the plaintiff to prove value would unduly extend this opinion. The competency of at least six of the witnesses called for that purpose is not questioned in the assignments, and presumably their testimony would have been sufficient to take the case to the jury. But as the case must go back for another trial we take occasion to say that although "the market value of

land is not a question of science and skill upon which only an expert can give an opinion," Penna. & N. Y. R. R. & Canal Co. v. Bunnell, 81 Pa. 414; yet in each case the trial judge should see to it that every witness called to prove value has a proper foundation of knowledge to make his opinion of some real worth, before admitting it as evidence: Friday v. Penna. R. R. Co., 204 Pa. 405. In large cities "neighborhood" is a relative term, and the field which a witness may take into consideration in forming an opinion of the selling price of land in the vicinity of a particular property, should not only be reasonably adjacent thereto, but it should be of the same general character as the immediate locality in which such property is situated; otherwise the opinion is of little value.

The judgment is reversed with a venire facias de novo.