## Llewellyn v. Sunnyside Coal Company, Appellant.

*Trespass—Mines—Unlawful occupation—Depreciation in value —Recovery.*

1. Where in an action of trespass to recover damages for alleged injuries to a coal mine and its equipment, belonging to plaintiff, and for the rental value of certain land adjacent to the mine owned by plaintiff, but unlawfully occupied by defendant for a number of years, it appeared that plaintiff had been the legal owner of the premises from November, 1907, but did not recover possession until January, 1914, it was error to admit evidence as to the condition and value of the mine in April and May, 1904, as defendant could not be required to pay plaintiff for injuries done to the properties prior to the acquisition of title by plaintiff.

2. In such case it was error for the trial judge to allow the jury to consider the evidence as to the condition of the mine in 1904, as contrasted with its condition in 1914, and to adopt the estimate of plaintiff's expert witnesses that the depreciation occurring between the years 1907 and 1914, was sixty per cent. of the entire depreciation, as such method of apportioning the depreciation was merely conjectural.

*Evidence—Real estate—Expert testimony—Cross-examination— Particular sales.*

3. In controversies respecting the value of real estate, while a party cannot bring out on cross-examination evidence of the price paid for other property, unless the witness has already testified that his opinion is based on his knowledge of the sales of such property, yet if he has so testified he may be cross-examined as to prices for the purpose of testing his good faith and credibility.

4. Where, in such case, plaintiff produced an expert witness as to the rental value of part of the property, who stated that he was familiar with rental values for commercial purposes of property in the community and based his opinon in part upon them, it was error to refuse to permit such witness to be cross-examined as to the rentals paid for other properties in the neighborhood, for the purpose of testing his good faith and credibility.

Argued Sept. 26, 1916. Appeal, No. 120, Oct. T., 1916, by defendant, from judgment of C. P. Cambria Co., March T., 1912, No. 148, on verdict for plaintiff, in case of D. J. Llewellyn v. Sunnyside Coal Co. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCH-ZISKER, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for injuries to real estate. Before STEPHENS, P. J.

The opinion of the Supreme Court states the facts.

The verdict was as follows: "And now, to wit: September 10, 1915, we the jurors empanelled in the above entitled case, find for the plaintiff as follows: Rent Triangular Lot at $2,750.00 per year with interest annually at 6 per cent. Rent Lot No. 1 at $16.75 per month with interest at 6 per cent. annually. Coal removed from plaintiff's land and compensation on same $153.83. Injuries to mine equipment, etc., $6,022.65."

The court entered judgment on the verdict. Plaintiff appealed.

*Errors assigned* were answers to points and rulings on evidence.

*John E. Evans,* of *Evans & Evans,* with him *F. P. Martin,* for appellant.

*Philip N. Shettig,* with him *Henry W. Storey, Jr.,* and *M. D. Kittell,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 8, 1917:

This was an action of trespass brought by D. J. Llewellyn against the Sunnyside Coal Company, a corporation, to recover damages for alleged injuries to a coal mine and to its equipment, belonging to plaintiff, located at Johnstown, Pennsylvania, and for the rental value of certain land adjacent to the mine, which he owned, but which was unlawfully occupied by defendant for a number of years.

This is the last of a series of suits between plaintiff and defendant and its predecessor in title: Llewellyn v. Cauffiel, 215 Pa. 23; Llewellyn v. Sunnyside Coal Co., 224 Pa. 66; Llewellyn v. Sunnyside Coal Co., 242 Pa. 517, all relating to the same land and mine. It appears from the record that in the case last cited, the present plaintiff recovered a judgment in ejectment against the present defendant, for the coal mine referred to above, a triangular piece of ground lying between the mine and the tracks of the Johnstown and Stonycreek Railroad, and another small lot of ground located near it. Defendant was in possession of these premises from December, 1905, to January, 1914, and plaintiff was shown to have been their legal owner from November, 1907. The triangular lot was used, prior to its occupancy by defendant, in transporting coal from the mine to the railroad for shipment, and a tram road and tipple for that purpose had been constructed upon it. Plaintiff alleged that, while defendant was in possession of the premises in controversy, the mine and its equipment had been neglected and allowed to deteriorate, so that the entire property had greatly depreciated in value. In the present suit plaintiff sought to recover the amount of this depreciation, and also the rental value of both the triangular piece of ground, and the lot which was known as Lot No. 1, for the six years during which he was kept out of possession. The suit resulted in a verdict in

favor of plaintiff, for $29,117.84, and, from the judgment
entered thereon, defendant has appealed.

In the fourth and fifth assignments of error complaint
is made of the admission, against objection of testimony
as to the condition and value of the mine in April and
May, 1904. The evidence shows that defendant did not
come into possession of the mine until December, 1905,
and the plaintiff did not acquire title until November 12,
1907, therefore, the defendant was not responsible to
him for any depreciation occurring in the mine prior to
that date. The objection made to the proof offered as
to the condition and value of the mine in the spring of
1904, should, therefore have been sustained. It would
have been proper to show the condition of the mine
in November, 1907, when plaintiff acquired title, and
also its value and condition in January, 1914, when he
obtained possession. For so much of the depreciation as
was due to the action or neglect of defendant, it would
be liable in damages. It was possible to have exam-
ined the mine at that time, for plaintiff's son, Ander-
son Llewellyn, was in it in February, 1908, and testified
as to its then condition. Plaintiff's expert witness, S. E.
Dickey, was in the mine on December 28, 1907, and also
testified as to its condition at that date. The trial judge,
as appears from the portion of his charge which is the
subject of the third assignment of error, allowed the jury
to consider the evidence as to the condition of the mine
in 1904, as contrasted with its condition in 1914, and,
adopting the estimates of plaintiff's expert witnesses
that the depreciation occurring between the years 1907
and 1914 was sixty per cent. of the entire depreciation,
permitted the jury to find a verdict on that basis. No
authority is cited either by the court below or by coun-
sel for appellee to sustain such a method of computing
damages to real estate, and none has been found. Coun-
sel for appellant suggest in their argument that the per-
centage used by the witnesses, in this calculation, was
reached by regarding the four years from 1904 to 1907

inclusive as being forty per cent. of the ten-year period from 1904 to 1914, and inferring that forty per cent. of the depreciation was, therefore, to be charged against that period, leaving sixty per cent. to be charged against the remaining six years. Such a method of apportioning the depreciation was merely conjectural, and the jury should not have been permitted to find a verdict upon any such basis. The burden was upon plaintiff to show by competent proof the extent of depreciation which was chargeable to the defendant, while the premises were in its possession. To do this it was necessary to show the condition and value upon November 12, 1907, as compared with the condition and value in January, 1914. As this was not done, the third, fourth and fifth assignments of error are sustained.

In the seventh assignment the court below is charged with error in refusing to allow defendant's counsel to cross-examine plaintiff's expert witness, Berkebile, as to the basis of his estimate of the rental value of part of the property. It appears that, upon direct examination, the witness testified that he was familiar with the rental value for commercial purposes of property in the vicinity of the triangular shaped piece of ground owned by plaintiff. He was then asked: "From your familiarity with such rental value, etc.,......do you feel competent to express an opinion as to the fair annual rental value of said triangular shaped piece for commercial purposes from November 12, 1907, to January 21, 1914?" His reply was in the affirmative. On cross-examination as to his competency, witness was asked of what other properties having commercial values in this vicinity he knew the rental value. He replied: "I know of one not very far away from there which is now being put in operation, that is the Sheesley property that they have rented from the Lorain Steel Company." He was held to be competent, and he testified that the rental value of the triangular shaped lot was $4,500 or $5,000 per annum, "considering its location and what it could be used for." On

the general cross-examination, the witness was asked whether he knew the rental received for the Sheesley property, and he said that he did. He was then asked "What is the rental received for that property?" The question was asked "for the purpose of attacking the good faith and credibility of the witness." Counsel for plaintiff objected to the question, and the objection was sustained. In Girard Trust Company, Trustee, v. Philadelphia, 248 Pa. 179, our Brother MOSCHZISKER said (p. 182) : "On several occasions we have held that, where an expert states he bases his estimate of the value of the property affected upon prices obtained on sales of 'similarly located land in the same neighborhood,' he may be cross-examined, to test 'his good faith......and the accuracy and extent of his knowledge,' as to all the conditions of these sales, including the prices (see Henkel v. Wabash Pittsburgh Terminal R. R. Co., 213 Pa. 485; Brown v. Scranton, 231 Pa. 593, 604; Drexler v. Braddock Boro., 238 Pa. 376, 379; and other cases cited in Rea v. Pittsburgh & Connellsville R. R. Co., 229 Pa. 106, 115)." The rule as established by our cases is that, while a party cannot bring out on cross-examination evidence of the price paid for other property unless the witness has already testified that his opinion is based on his knowledge of the sales of such property, yet, if he has so testified, he may be cross-examined as to prices, for the purpose of testing his good faith and credibility. In the present case, not only did the witness testify that he based his opinion in part on his knowledge of rental value of the Sheesley property, but he admitted on cross-examination that the situation of the property was similar to that of plaintiff's triangular lot, to the extent that both were located on the line of the railroad within 2,000 feet of each other, and that each could be used for loading purposes. We think the question was proper for the purpose suggested, which was to test the good faith of the witness, and the accuracy of his knowledge. His estimate was extremely high, as compared with those of

real estate dealers familiar with rental values in the vicinity. He admitted that he ignored sale .values in the neighborhood, and based his estimate upon some particular manner in which the triangular piece of ground could, in his judgment, be used, for which he thought an unusual compensation could be obtained. What manner of use this was, he did not state in his direct examination. The situation was one in which liberal cross-examination should have been permitted in order to enable the jury to properly determine the credit to be given to the estimate of the witness.

The judgment is reversed with a venire facias de novo.