## Berkley v. Jeannette, Appellant.

Argued March 24, 1953. Before Stern, C. J., Stearne, Jones, Chidsey, Musmanno and Arnold, JJ.

*Fred B. Trescher,* with him *Robert Wm. Garland,* City Solicitor, for appellant.

*A. C. Scales,* with him *Joseph M. Loughran* and *Scales & Shaw,* for appellees.

OPINION BY MR. JUSTICE JONES, April 13, 1953:

At the trial of the plaintiffs' appeal from an award of viewers for damages to their property due to the condemnation of a portion by the defendant municipality, the jury returned a verdict in the sum of $6,000. The court en banc refused the defendant's motion for a new trial conditioned upon the plaintiffs' filing a remittitur for $1,000 which was done. Judgment for $5,000 was accordingly entered and the defendant appealed.

The plaintiffs were the owners of a tract of land in the City of Jeannette improved with a four-room dwelling. They had acquired the property in two parcels, viz., (1) a tract having a frontage of 32 feet on Sellers Avenue and a depth of 100 feet whereon the dwelling was erected, and (2) an adjoining vacant lot with a frontage of 25 feet on Sellers Avenue and a depth of 123 feet. For the extension of another street (Seventh), the City appropriated of the plaintiffs' property all that had been the vacant lot and a portion of what had been the lot whereon the dwelling stood. The dwelling itself remained intact and the entrance thereto from Sellers Avenue was unaffected. In addition to the actual taking, however, the street improvement left the rear of the unappropriated portion of the property substantially below grade.

:. The appellant assigns for error (1) the trial judge's refusal to permit the defendant to cross-examine the husband-plaintiff as to the prices paid for the house and lot and the vacant lot upon the plaintiffs' acquir-

ing them, respectively, 10 months and 4 months prior to the condemnation, the witness having testified in direct examination to the value of the property as a whole at the date of the condemnation; (2) the trial judge's refusal to permit the defendant to cross-examine one of the plaintiffs' valuation witnesses as to the price at which a somewhat similarly situated vacant property had been sold; and (3) the alleged inadequacy of the court's charge on the measure of damages with respect to (a) detention of payment and (b) the meaning of fair market value.

In *Rea v. Pittsburg & Connellsville Railroad Company*, 229 Pa. 106, 114-115, 78 A. 73, which was a proceeding for the determination of the damages due the plaintiffs for an appropriation of their property by the defendant railroad company, one of the plaintiffs, appearing as a witness, testified in direct examination to a value for the condemned property at the time of the appropriation of $1,056,000. The defendant sought to cross-examine him as to what he or his father had paid for the property upon acquiring it two years and nine months prior to the condemnation. In connection with the desired cross-examination, defendant's counsel offered " 'to show by the witness for the purpose of testing the credibility of his testimony and the competency of his knowledge as to the value of this property in March, 1903, the fact that his father [had] purchased the property . . . in the month of June, 1900' " for the price of $140,000; that the former owner had had the property upon the market for sale for a number of years before it was finally sold to the witness's father; and, that " 'there was no such increase in the market value of the property between June, 1900, and March, 1903, as would be indicated by the price paid for the property in June, 1900, and the estimate now given by the witness of its market value in March,

1903.' " The trial court sustained the plaintiffs' objection to the proposed cross-examination. The defendant made practically the same offer in its case in chief; this was likewise objected to and rejected. Upon this court's review of these rulings, Mr. Justice MOSCHZISKER said, ". . . after serious consideration we have reached the conclusion that *under the peculiar facts of this case* the question as to the purchase price of the property in June, 1900, was proper cross-examination and should have been allowed" (Emphasis supplied).

The scope of the ruling in the *Rea* case was later extended by this court in the case of *Greenfield v. Philadelphia*, 282 Pa. 344, 348, 351, 127 A. 768, which was tried in the court below on an appeal by the defendant city from a viewer's award in the plaintiff's favor for damages due to a condemnation by the city. The plaintiff was called as a witness in his own behalf but gave *no* testimony in direct examination as to the value of the property involved. However, he was asked on cross-examination and was compelled to testify, over objection by his counsel, to what he had paid for the property upon acquiring it a year before the condemnation. A verdict and judgment for the defendant having ensued, the plaintiff appealed to this court, assigning for error the above-mentioned ruling. This court held that, inasmuch as the plaintiff's purchase of the property was not remote in relation to the time of the condemnation, the price he paid for it was, on the authority of the *Rea* case, supra, relevant and material to the issue of appreciated value which the plaintiff claimed for it; that, although he had not testified in direct examination as to the value of his property, being a party to the litigation, he was open to cross-examination on any relevant matter (subject to a currently immaterial qualification) regardless of the limitations upon his direct examination; and that, consequently, the cross-

examination as to what he had paid for the property was proper.

The rule to be deduced from the *Rea* and *Greenfield* cases is that, when an owner of property offers himself as a witness upon the trial of his claim for damages due to a condemnation of his property or a portion of it, he may be asked on cross-examination what he paid for the property, if his acquisition thereof is not so remote as to deprive the purchase price of any relevant evidentiary worth; and, that is so, whether or not he testified to the value of his property upon direct examination. Introduction of the purchase price is not permitted, however, in order to influence, by comparison, the jury's determination of the property's value at the time of the condemnation. Its legally intended office is to affect the credibility of the witness in respect of his valuation opinion (as in the *Rea* case) or to impeach the integrity of his claim (as in the *Greenfield* case). The rule is, therefore, not applicable to a situation such as the record here discloses. What the defendant's counsel sought to elicit on cross-examination of the husband-plaintiff was not what the plaintiffs had paid for the property as an integrated whole but what they had paid for each of the tracts separately at different times. The two sums added together would not have given a figure by which the witness's opinion of the value of the properties as a whole at the time of the condemnation could have been impeached. It is not only possible, but probable, that each of the constituent lots took on an increased value upon its being merged with the other which was forthwith to be reflected in the value of the properties as a whole. If anything, testimony as to the several purchase prices would have been confusing rather than justly impeaching: cf. *Goodman v. City of Bethlehem*, 323 Pa. 58, 69, 185 A. 719. The learned trial judge did not, therefore,

err in excluding the defendant's proposed cross-examination of the husband-plaintiff in the particular indicated.

Coming to the question of defendant's proposal to cross-examine a valuation witness for the plaintiffs as to the price for which a somewhat similarly situated vacant tract of land had been sold (more or less contemporaneously with the condemnation), the rule in general is that "while a party cannot bring out on cross-examination evidence of the price paid for other property unless the witness has already testified that his opinion is based on his knowledge of the sales of such property, yet, if he has so testified, he may be cross-examined as to prices, for the purpose of testing his good faith and credibility": *Llewellyn v. Sunnyside Coal Company*, 255 Pa. 291, 296, 99 A. 869. In passing, it may be noted that here, again, the evidence of such collateral sale price is not admitted that a standard of comparative valuation may be introduced but for the purpose of testing the witness's "good faith and credibility". For example, the witness might be incorrectly informed as to what the sale price actually was. In the present instance, however, the witness's testimony does not show that he took the particular sale price into consideration in formulating his opinion as to the value of the plaintiffs' property. There is absent, therefore, an indispensable prerequisite to the cross-examiner's right to have the witness tell what he understood the sale price of the similarly situated property to be. In *Pennsylvania Co. etc. v. Philadelphia*, 268 Pa. 559, 564, 112 A. 76, we said that ". . . the test must be the use made by the witness of the sale price of property thus situated [descriptively similar to the property in suit]. *If it did not enter into his estimate as a factor upon which value was based, he cannot be cross-examined as to the sale price"*

(Emphasis supplied). It was also recognized in the *Pennsylvania Company* case that "The factors entering into the sales of property are so many that the admission of such evidence should be carefully guarded." Furthermore, in prescribing the range of cross-examination, especially where it touches collateral matter, much must be left to the sound discretion of the trial judge: *Littieri v. Freda*, 241 Pa. 21, 27, 88 A. 82. The second assignment is also without merit.

While the court's charge on the question of damages for detention of payment of the compensation due for the taking was meager, it did not reflect positive error. In that situation, the defendant, having failed to ask for fuller or more specific instructions, is not now in position to assail the charge as inadequate. The same can be said for the appellant's complaint that the trial judge neglected to define the term "fair market value". The defendant neither presented a point for instructions in such regard nor did it ask the court to define the term even after the matter had been brought directly to counsel's attention by the court's affirmance of the plaintiffs' point that the measure of damage was "the difference between the market value before and after the taking." No exception to the affirmance of this point was taken. Nor is it assigned for error. Immediately after the affirmance of the plaintiffs' point, the trial judge inquired of counsel,—"Is there any request for further instruction to the jury." Defendant's counsel made none. The procedural situation thus revealed parallels that in *Tibbetts v. Prudential Insurance Co.*, 313 Pa. 310, 314, 169 A. 382, where Mr. Justice LINN, in pointing out that the appellant had waived any complaint it might have had concerning the adequacy of the court's charge, said,—"Appellant is not in position to complain that the judge did not instruct the jury [on the matter there questioned] . . . . . Not

384

only was no point for charge presented on its behalf, but plaintiff's point on the subject was affirmed and no exception was taken; the affirmance is not assigned for error; and when, at the conclusion of the charge, the judge asked counsel for suggestions for additional instruction, none was desired: Moore v. Leininger, 299 Pa. 380, 384, 149 A. 662." That disposes of the remaining assignments.

The record impels the conclusion that the case was thoroughly tried by counsel and fairly submitted by the court. After a review of the testimony, the court en banc affected a proportionately substantial reduction in the verdict with a view to arriving at a just result which we believe has been achieved.

Judgment affirmed.