# Girard Trust Co., Trustee, Appellant, v. Philadelphia.

*Evidence — Condemnation proceedings — City of first class — Damages—Relevancy of tax assessments—Practice, C. P.—Trials —Objectionable testimony—New trial—Judicial discretion.*

1. Tax assessments in the City of Philadelphia are by agents of the Commonwealth and not the city and although such assessments are used by the city in determining its borrowing capacity, the city does not thereby express its estimate of the value of the land assessed but merely gives such recognition to the assessments as the law compels it to render; and such assessments are not admissible in evidence in proceedings to assess damages for land condemned for municipal purposes, as an admission by the city of the value of the land taken.

2. On the trial of an appeal from an award of viewers in condemnation proceedings, where an expert states he bases his estimate of the value of the property affected upon prices obtained on sales of similarly located land in the same neighborhood, he may be cross-examined to test his good faith and the accuracy and extent of his knowledge as to all the conditions of these sales including the prices, but generally speaking, even on cross-examination such a witness cannot in the first instance be interrogated concerning the prices brought at sales not relied upon by him in making his original estimate of value, although, if he has relied on some sales in the neighborhood, he may be asked without mention of prices if he knew of other sales of property similarly located and whether he considered them, and if not, why not; the course which the investigation may take after that depends largely upon the discretion of the trial judge, constantly keeping in mind the fact that the cross-examination is simply a test of the good faith and accuracy of the witness and that prices paid at particular sales of other properties are not, in themselves, evidence of the market value of the land in controversy.

3. The refusal of a new trial on appeal from the award of viewers in condemnation proceedings was not an abuse of judicial discretion, where an expert witness for plaintiff was questioned, on cross-examination, as to prices received for other land in the neighborhood, and the court sustained such objections thereto as were made and there were no exceptions to the rulings of the court, no request for instructions concerning the alleged harmful evidence, and no motion for the withdrawal of a juror.

Argued Jan. 15, 1915.   Appeal, No. 336, Jan. T., 1914; by plaintiff, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1912, No. 3000, on verdict for plaintiff, in case of Girard Trust Company, Trustee under the will of Thomas H. Powers, Deceased, and Mary Powers Harris, Curator for the time being of the Trusts under the said will, v. City of Philadelphia.   Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Appeal from award of board of viewers in condemnation proceedings.   Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for $85,625 and judgment thereon.   Plaintiffs appealed.

*Errors assigned,* among others, were rulings on evidence and in refusing to grant a new trial.

*A. H. Wintersteen,* with him *Sharswood Brinton,* for appellants.

*Edwin O. Lewis,* Assistant City Solicitor, with him *Michael J. Ryan,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 15, 1915:

This is an appeal by the plaintiffs from a judgment entered on the verdict of a jury for damages arising from the taking of land by the defendant under its right of eminent domain.

Only two questions involved are stated for our consideration, and they may be summarized thus:   (1) Whether certain tax assessments on the land in controversy, made immediately prior to this time of the taking, should have been admitted in evidence, the plaintiffs having paid the taxes so assessed;   (2) Whether the court below abused its discretion in not granting a new trial,

the defendant's counsel on several occasions during the examination and cross-examination of expert witnesses having referred to the selling prices or values of properties other than the plaintiffs' land, and the verdict being considerably less than the award of the viewers.

The appellants contend that the tax assessments should have been admitted, and submitted to the jury as some evidence of value, on the general principle that "a declaration made by a party against his interest is admissible as against him," and they base their argument on the assumption that the City of Philadelphia either actually made or, in effect, adopted the tax assessments in question. The answer to the argument that the city made the assessments is to be found in the recent case of Selig v. Philadelphia, 232 Pa. 309, where the method of assessing taxes in Philadelphia is elaborately discussed and it is ruled that such taxes are assessed by a "State Agency" under a system established by the Commonwealth and administered through public officers (see Richie v. Philadelphia, 225 Pa. 511, 516) appointed by "a State Department whose rulings are subject to appeal ......to the courts of the Commonwealth," and that the city officials have no jurisdiction in the matter whatever. As to the theory of adoption, we see no merit in the argument that, because the city received taxes based on these assessments and they were used in determining its borrowing capacity, the municipality in effect adopted them as an expression of its own estimate of the value of the plaintiffs' land; for no corporate body can properly be held to have adopted the action of another independent public agency by merely giving such recognition thereto as the law compels it to render.

Although certain excerpts, in the most part dicta, from some of the opinions called to our attention by counsel for the appellants (see Smith v. Penna. Co., 141 Pa. 68, 72; Miller v. Windsor Co., 148 Pa. 429, 439; Philadelphia v. Gowen, 202 Pa. 453, 457) give a shadow of support to their contention in favor of the admissibility of

the tax assessments, as here offered, yet, none of the authorities relied upon actually rules that such assessments are to any degree admissible as evidence of the value of real estate taken or damaged by a municipality; while the cases cited by counsel for the appellee expressly hold that, in instances where the right of eminent domain is exercised by corporations other than municipal, tax assessments are never admissible to prove the value of the real estate affected (see Hanover Co. v. Ashland Co., 84 Pa. 279, 285; Schuylkill Co. v. Stocker, 228 Pa. 233, 242; also see Com. v. Tryon, 31 Pa. Superior Ct. 146, 149). It is true that these latter authorities can be distinguished on their facts from the case at bar, but the general ruling therein, to the effect that, in cases of this character, tax assessments represent nothing more than "ex parte statements" of the opinion of the assessor, applies, and, after giving most thorough consideration to the well stated argument of the able counsel for the appellants, we are not convinced that the court below erred when it refused to admit the assessments offered at the present trial; hence, the first question involved must be answered in the negative.

In support of the appellants' contention that the second question stated at the head of this opinion should be answered in the affirmative they argue that, to their prejudice, counsel for the defendant repeatedly breached a recent ruling of this court regulating the cross-examination of expert witnesses; citing Roberts v. Philadelphia, 239 Pa. 339, 341. There is nothing in the opinion in the Roberts case which, in any manner, or to any degree, altered or was intended to change the established rules relating to the examination of expert witnesses; in fact, our Brother STEWART practically there so states in his reference (p. 342) to Rea v. Pittsburgh Co., 229 Pa. 106. On several occasions we have held that, where an expert states he bases his estimate of the value of the property affected upon prices obtained on sales of "similarly located land in the same neighborhood," he may be cross-

examined, to test "his good faith......and the accuracy and extent of his knowledge," as to all the conditions of these sales, including the prices (see Henkel v. Wabash Co., 213 Pa. 485; Brown v. Scranton, 231 Pa. 593, 604; Drexler v. Braddock Boro., 238 Pa. 376, 379; and other cases cited in Rea v. Pittsburgh Co., supra, at p. 115, et seq.); but, generally speaking, even on cross-examination, such a witness cannot in the first instance be interrogated concerning the prices brought at sales not relied upon by him in making his original estimate of value, although, if he has relied on some sales in the neighborhood, he may be asked, without mention of prices, if he knew of other sales of properties similarly located and whether he considered them, and if not, why not; the course which the investigation may take after that depends largely upon the discretion of the trial judge, constantly keeping in mind the fact that the cross-examination is merely to test the good faith and accuracy of knowledge of the witness, and that prices paid at particular sales of other properties are not, in themselves, evidence of the market value of the land in controversy (see Pittsburgh & Western R. R. Co. v. Patterson, 107 Pa. 461, 462, 464).

In the Roberts case the rule as we have just stated it was breached in more than one particular; there, under the guise of cross-examination, counsel arbitrarily attempted to get in evidence the prices brought at sales other than those mentioned by the witness as the foundation of his valuation. The particular sales inquired about in that case not only had not been referred to in the direct examination of plaintiffs' experts, but, in some instances, they were of land not similarly located, whereas, here, in practically every instance, the sales referred to by counsel for the defendant were those which had first been brought into the case by counsel for the plaintiffs, on the direct examination of their leading expert witnesses, as sales of similarly located properties which "would most favorably compare" with the property of

the plaintiffs and upon which an estimate of the value of the land under consideration might fairly be based. Although counsel for the plaintiffs expressly warned his witness not to state "the price at which the sales were made," yet he added, "Unless my friend Mr. Lewis (counsel for the defendant) wishes the figures—in case he wishes them, you may give them"; and, in fact, the witness did thereafter, of his own accord, make a most pointed reference to these other sales, stating that the prices obtained therein were higher than the value he put on the plaintiffs' property; further, while we find much talk about striking from the record the bit of testimony just referred to, yet, we see no order to that effect. It is unnecessary, however, to go into a lengthy discussion of this branch of the case, for it is not properly before us. An examination of the record shows that wherever counsel for the defendant mentioned prices of other sales, and an objection was made, it was promptly sustained, and, when requested, the court struck out any testimony elicited by such questions; more than this, in not one of the instances complained of did counsel for the plaintiffs take an exception to the ruling of the court below, and we discover no request upon the record for instructions to the jury concerning the alleged harmful references to these other sales, nor do we find any motion to withdraw a juror and continue the case at the cost of the defendant, which is the usual practice pursued when either party feels that he is being prejudiced in a matter of this kind.

Finally, since the court below saw the witnesses and had a better opportunity to judge the value of their testimony than we, and since, by refusing a new trial, that tribunal has indicated its satisfaction with the verdict, we are not convinced that this is a case which calls for the exercise of the extraordinary power to grant a new trial given to this court by the Act of May 20, 1891, P. L. 101; for, as we have often said, this power is "exceptional in character and only to be exercised in very clear cases of wrong": Stevenson v. Ebervale Coal Co., 203 Pa.

316, 330; Murtland v. English, 214 Pa. 325; Rea v. Pittsburgh Co., supra, at p. 114; Peoples Nat. Bk. v. Hazard, 231 Pa. 552.

The assignments of error are all overruled and the judgment is affirmed.