## Knickerbocker Lime Company, to use, v. Philadelphia.

*Levinthal & Kraus* and *John C. Bell,* for plaintiff.

*A. T. Ashton* and *James Francis Ryan,* for defendant.

SMITH, J., Oct. 16, 1930.—The City of Philadelphia, by an ordinance dated Oct. 15, 1928, condemned land along the east bank of the Schuylkill River from the preëxisting line of Fairmount Park to Callowhill Street bridge as an addition to the Parkway. After condemnation this property was conveyed to George D. Van Sciver and J. B. Van Sciver. An award was made by the board of viewers, from which the plaintiff appealed. The case was then tried by a court and jury and a verdict found for the plaintiff in the sum of $1,430,-642.20.

From this verdict the plaintiff has filed exceptions asking for a new trial. Outside of the customary reasons, the following reasons were assigned:

"1. The trial court erred when it permitted plaintiff's witness, Eden S. Tomlinson, to be cross-examined as to prices of sales in the vicinity.

"2. The trial court erred when it permitted defendant's witness, James F. Dempsey, to testify as to sales which took place after the date of the taking and the prices paid therefor.

"3. The trial court erred when it refused to allow the defendant's witness, James F. Dempsey, under cross-examination, to testify to the usual custom in real estate transactions relative to carrying charges.

"4. The trial court erred in admitting into evidence the photostatic copy of the Pennsylvania capital stock tax return for 1928 of the Knickerbocker Lime Company.

"9. The learned trial judge erred in his charge to the jury in that the said charge unduly stressed the contentions of the defendant and the evidence of the defendant's witnesses, and the general effect of the charge was to give to the jurors a misleading impression as to the material issues involved."

Taking up the exceptions in the order of their importance: did the trial judge err when he permitted one of the plaintiff's real estate experts to be cross-examined as to the prices of sales in the vicinity? The real test is whether the admission of testimony under cross-examination was calculated to mislead the jury so as to make its verdict be the result of inaccurate and irrelevant evidence. Generally, the prices paid for other tracts in the same neighborhood would be no criteria of the value of the land in question, as the jury could not be in the position of knowing the terms, conditions or collateral facts attending the sales of such other tracts. In Roberts *v.* Philadelphia, 239 Pa. 339, Mr. Justice Stewart (at page 342) said:

"It is admissible on cross-examination of a witness to inquire whether he knew of certain sales made of properties in the neighborhood only because the value of the opinion he has expressed depends in a large degree upon his familiarity with ruling prices. Except as he have such knowledge he is not qualified to testify; the greater that knowledge the better is he qualified to speak and the greater the weight of his opinion. To introduce the prices, however, at which the properties sold is to suggest to the jury a comparison which they are unable to make in order to determine what credit they are to give the witness."

In McSorley v. Avalon Borough School District, 291 Pa. 252, Mr. Justice Simpson (at pages 255 and 256) said:

"After an expert witness has been examined and cross-examined as to his competency and has, in addition, been so interrogated as to show fully the extent of his knowledge regarding the value of the property taken, in order that the jury may be able to determine what weight shall be given to his testimony, the only other questions in chief should be as to his opinion of the value of the property, in its entirety, before and after the taking. The cross-examination may, of course, cover a wider field. 'In fact, any and every *pertinent* question may be put to him on cross-examination which will enable the jury to place a fair estimate upon his testimony as to the damages sustained by the plaintiff:' Davis v. Pennsylvania R. R. Co., 215 Pa. 581, 585; Rea v. Pittsburgh, etc., R. R. Co., 229 Pa. 106, 115; Stone v. Delaware, etc., R. R. Co., 257 Pa. 456, 464. This includes the right to inquire 'of a witness . . . whether he knew of certain sales made of properties in the neighborhood, . . . [but not] to introduce the prices, however, at which the properties sold, . . . [for this] is to suggest to the jury a comparison which they are unable to make in order to determine what credit they are to give the witness. . . .' An exception to this rule appears if the examination in chief shows that the 'witness considered—in the sense that, in his estimate of value, he was aided by or relied on—prices paid for properties similarly situated, [in which event] he may be cross-examined as to the prices paid for such other similar properties, as testing his good faith, credibility, accuracy and extent of knowledge' (Pennsylvania Co. for Ins. on Lives, etc., v. Philadelphia, 268 Pa. 559, 563); but only if it further appears that such properties 'are in the same neighborhood and similarly situated.'"

In Serals v. West Chester Borough School District, 292 Pa. 134, Mr. Justice Frazer (at page 136) said:

"It is not proper under the guise of cross-examination to develop as affirmative evidence of value facts that neither party could have shown in chief (Schonhardt v. Pennsylvania R. R. Co., 216 Pa. 224);" and (at page 137) "Where an expert states he bases his estimate of the value of the property affected upon prices obtained on sales of similarly located land in the same neighborhood, he may be cross-examined to test his good faith and the accuracy and extent of his knowledge as to all the conditions of these sales, including the prices; but, generally speaking, even on cross-examination, such witness cannot in the first instance be interrogated concerning the prices brought at sales not relied on by him in making his original estimate of value, although if he has relied on sales in the neighborhood he may be asked, without mention of prices, if he knew of other sales of properties similarly located, and whether he had considered them, and if not, why not: Girard Trust Co. v. Philadelphia, 248 Pa. 179."

Eden S. Tomlinson, the witness in question, after being examined as to his qualifications as a real estate expert, was examined in chief as follows:

"Q. Will you give us your value of the ground, buildings and machinery immediately before the taking and immediately thereafter and what damage, in your opinion, has been suffered by the plaintiffs in this case by reason of the taking? A. I valued the land, buildings and machinery at $2,370,378 and afterwards I valued the machinery left at $2042, making a damage of $2,368,336. Q. Will you describe the property that you have just appraised? A. This property contains 102,722 square feet of ground. In the right of way of the Schuylkill River East Side Railroad was 8600 square feet, which I have deducted, leaving 94,122 square feet of ground. I valued this ground at $20 a square foot or $1,882,400, the buildings I value at $439,225, and the machinery, according to the testimony of Mr. Davis, at $47,753, which makes the entire value $2,370,378. Q. That was your value before the taking and the after value was the value of the machinery which you have testified to? A. Yes, sir, according to the testimony of Mr. Davis. I accepted that appraisal. Q. And that makes your total how much? A. $2,368,336.

In the cross-examination he was asked questions concerning the prices at which other properties sold in the neighborhood. The evidence shows the following cross-examination:

"Q. Do you know at what price per square foot the property was purchased by Greenberg? A. I heard what it was. Q. How much? (Objected to. Objection overruled. Exception to plaintiff.) A. I understood it sold for $9 a square foot at the time Greenberg purchased that property."

Mr. Justice Simpson well said in the McSorley case, *supra* (page 254):

"No other evidence is as unsatisfactory as that necessarily received in this class of cases. Courts and juries are given, by the witnesses, matters of opinion only, the accuracy of which is far more difficult to test than are disputed questions of fact. An endeavor to minimize this uncertainty may excuse the error which appears in the ruling now complained of and in the single case supposed to sustain it, but it is error notwithstanding."

We shall abide by that ruling.

The second exception was that Dempsey, a real estate expert for the City, was permitted to testify to the selling price of other properties along the river front after the date of the taking of plaintiff's property. Mr. Dempsey said (page 190, notes of testimony):

"In arriving at that value I have taken into consideration all of the sales immediately around this property and also all of the river-front sales extending from South Street up to Callowhill Street directly opposite this property. There hasn't been a sale along the whole river front that ever sold beyond $10 a square foot."

To this there was no exception taken. This witness was exhausively cross-examined as to the various appraisals of the square-foot price of other properties adjacent to the plaintiffs' property. He was cross-examined as to other locations, areas comparable to that of plaintiffs; the appraisals he gave in condemnations of other adjacent properties; the price for which another property in the neighborhood was purchased by an individual and the price for which a part of it was sold. On re-direct examination this witness was asked about the sale price of properties between Chestnut and Walnut Streets fronting on 30th Street, running back to the Schuylkill River and having the same characteristics as the property of the plaintiff. As to the date of the sales, the witness testified: "A. The negotiations have been going on for the past two years. There is no particular date on which they ever made settlement. Q. You cannot give any date for these sales? A. No, sir, but we have been watching—have been working on them for the last two years. Mr. Kraus:

These are not sales. I am asking for dates of sales and they have no sales, but state they have been working at them for two years, and I move to strike out any testimony as to these sales. (Motion overruled. Exception for plaintiff.) By Mr. Ryan: Q. Within what period were these made? A. In the last three years, in the improvements that were to be made on the west bank of the Schuylkill River negotiations have been going on. The Morris Wheeler was the first settlement that was made, but I haven't the date of that. By Mr. Kraus: Q. Was that after the date of the taking? A. Before and after. Mr. Kraus: I object to any sale after the date of the taking. (Objection overruled. Exception for plaintiff.)"

The trial took place on May 19, 1930. The ordinance condemning the property of the plaintiffs was Oct. 15, 1928. There was not sufficient evidence of variance in time as to make the admission of the testimony error.

The ninth assignment of error is without merit. The trial judge said nothing which in any way would tend to mislead the jury. The charge was a fair and impartial one and placed the issues clearly to the jury.

The exception taken to the admissibility of evidence given by Tomlinson under cross-examination is sufficient for the granting of a new trial. The motion for a new trial is, therefore, granted.