Frey *v.* Nakles, Appellant.

Argued January 5, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Paul W. Mahady*, with him *Mahady & Mahady*, for appellants.

*D. J. Snyder, Jr.*, with him *Kunkle & Trescher*, for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 14, 1955:

This action in assumpsit was brought by Lewis A. Frey and Jentila T. Frey, his wife, the vendees in a written agreement for the sale of a hotel and restaurant business, against the defendants, Elias S. Nakles and Latife Nakles, his wife, the vendors, to recover damages on account of the failure of the defendants to convey the business in accordance with the terms of the agreement. The plaintiffs claimed as damages a down payment of $1,000, received by the defendants

on the execution of the agreement, expenses incurred in reliance on the contract and anticipated loss of profits from the operation of the business. The jury returned a verdict for the plaintiffs in the sum of $5,076. After defendants' motions for a new trial and judgment non obstante veredicto were refused by the court en banc and judgment entered on the verdict, defendants took this appeal.

Considering the evidence in the light most favorable to the plaintiffs, the following facts appear. Early in December of 1950 defendants engaged John E. Herman, a real estate broker in Westmoreland County, to sell a hotel and liquor license business owned by them in the Borough of Latrobe, Pennsylvania, known as the "National Hotel". The defendants informed Mr. Herman that the business realized $15,000 net profit per year and the agent so advertised in the Pittsburgh Press. The advertisement caused the plaintiffs to seek information concerning the business from Mr. Herman, who arranged a meeting for the following day between the plaintiffs and the defendants. As a result of the meeting between the parties and the plaintiffs' physical inspection of the premises and of defendants' books, an agreement of sale was entered into on December 19, 1950 which provided in substance that the vendors agreed to sell and convey the hotel and restaurant business, including the furnishings and equipment, and to cooperate in every way in having the liquor license transferred to the purchasers. The agreement provided further for a lease of the property on which the business was conducted, title to which was in the name of both defendants, as tenants by the entireties, for a period of five years, beginning January 1, 1951 at a monthly rental of $400. The selling price of the personalty was $11,000, of which $1,000 was to be paid at the execution of the agreement, $5,000 on or before

January 1, 1951, and the balance of $5,000 was to be secured by a judgment note bearing interest at 4%. The entire transaction was to be consummated by the execution of all necessary papers on or before January 1, 1951.

Shortly thereafter the plaintiffs contacted A. Frank Steiner, Esquire for the purpose of preparing the instruments required for a transfer of the liquor license, a bill of sale and a lease. The closing date was extended by mutual assent in order to effectuate the transfer of the liquor license which was in the name of William F. and Helen N. Frichtel, the son-in-law and daughter of defendants. All of the necessary papers for the transfer of the license had been executed by the parties and returned by the Pennsylvania Liquor Control Board by January 16, 1951. On that date the parties met in Mr. Steiner's office and the lease was signed by the plaintiffs and the defendant Elias S. Nakles. However, the wife-defendant, Latife Nakles, having signed all other papers, refused to execute the lease. Plaintiffs, on the other hand, presented certified checks payable to the order of the defendants in the sum of $5,000 and $400 toward the purchase price and the first month's rent, respectively. As before stated, they had theretofore paid the down money of $1,000. Subsequent to this meeting defendants through their present counsel submitted a lease to the plaintiffs which in effect provided for a reassignment of the liquor license to the defendants upon any default in the lease or sale of the premises by the plaintiffs. No meeting to discuss the lease proposed by the defendants was ever held nor was any reply given. On January 15, 1952 the plaintiffs instituted this proceeding claiming the damages already indicated. The defendants had never delivered but remained in possession of the premises and business.

In support of their motion for judgment n.o.v. defendants claim that the agreement of sale must be interpreted either as a contract which contained in itself a lease or a contract to negotiate a lease, and under either construction they performed all of the conditions of the contract. While the words "hereby lease" ordinarily connote an agreement *of* lease, when the agreement here involved is considered as a whole, we think it clear that the provision in question was not a lease itself but merely an agreement *to* lease. Under the agreement the parties contemplated a sale of the hotel business, a transfer of the hotel liquor license and a lease of the premises for a period of five years. The subject matter of the sale, the consideration for the transfer of the personalty and for the lease and the term of the lease were set forth with sufficient definiteness in the original agreement. Since the only act remaining to be done by the parties was the execution of the necessary papers, including a formal agreement of lease in substantial conformity with the terms embodied in the agreement of sale, the provision could not possibly be construed as an agreement "to negotiate" the terms of a lease.

It was not denied that the defendant-wife refused to join in the lease submitted by the plaintiffs, and the only reason advanced by the defendants at the trial to justify her refusal was that she demanded that a clause be included therein to the effect that at the end of the five year period of the lease the liquor license was to be retransferred to the defendants. The agreement of sale contained no provision for a retransfer of the liquor license prior to or upon the termination of the lease. Defendants could not justifiably insist upon the insertion of this additional term which would materially alter the original agreement and render the agreed upon exchange of dubious worth to the plain-

tiffs. It was admitted that Mrs. Nakles refused to execute the lease for the reason stated. Under these circumstances the trial judge properly affirmed plaintiffs' point that under all the law and evidence the jury's verdict must be for the plaintiffs and the issue limited to the damages to which plaintiffs were entitled. In affirming this point the trial judge said: "Everybody agrees that Mrs. Nakles refused to sign this agreement of lease and transfer unless it was guaranteed to be assigned back to her at the end of five years, which no human man could do.". The defendants took no exception to the affirmance of the point or to the accompanying statement. As a matter of law the plaintiffs could not assure the retransfer of the license since this was a matter entirely within the discretion and power of the State Liquor Control Board. The terms sought to be added by the defendants to the original agreement did not provide merely for the "cooperation" of the plaintiffs in this regard as did the original agreement, but called for an undertaking by the plaintiffs to retransfer, something beyond their power and ability to perform.

The only remaining question that need be considered is whether the charge of the court on the question of damages was "so inadequate and obscure" as claimed by appellants, as to necessitate a new trial. Defendants have raised several assignments of error with respect to the court's charge but since only a general exception was taken by them, we deem it necessary to consider only those alleged errors which might possibly be construed as basic or fundamental. Defendants' principal contention would appear to be that the jury was not instructed as to the proper measure of damages, arguing that the measure of damages for the breach of a contract to lease is the actual loss suffered and not the value of the bargain. The learned trial

judge instructed the jury that "The measure of damage applicable to this type of a situation is what is called the loss of bargain, that is, if you find a verdict for the plaintiffs you may include in that verdict any money paid, with interest, and any expenses incurred in connection therewith and in addition you may allow as damages the losses caused, or profits, or other gains prevented by the breach of the defendants, which may include the loss to the plaintiffs from carrying on a well-established business as determined on the basis of the past history of that business.".

A contract to lease is similar to a contract for the sale of land with respect to the measure of damages for a breach arising from the refusal of the lessor or vendor to perform: *M'Clowry v. Croghan's Administrator*, 31 Pa. 22, 23. It has been well settled that in a vendee's action against his vendor for breach of a written contract to convey land, the vendee's right of recovery, if the vendor acted in good faith, is limited to the down money, and such other reasonable expenditures that the vendee has incurred in reliance upon the contract: *Kargiatly v. Provident Trust Company of Philadelphia et al.*, 338 Pa. 358, 12 A. 2d 11. However, where a vendor or lessor arbitrarily and without reasonable excuse, in order to escape the effects of a bad bargain, refuses to comply with his contract, the vendee or lessee is entitled not only to compensatory damages but to damages arising from the loss of his bargain: *Bartram v. Hering*, 18 Pa. Superior Ct. 395; *Seidlek v. Bradley*, 293 Pa. 379, 142 A. 914. In the latter case, Mr. Justice KEPHART said at p. 383 that ". . . Any unjustified failure to perform a written contract, whether this failure be fraudulent or not, entitles the vendee to damages for the loss of his bargain . . .". In our opinion the trial judge correctly stated the true measure of damages applicable to the facts of this case,

for there was sufficient evidence in the record to support a finding that the defendants acted in bad faith as that term has been defined under our decisions. The wife-plaintiff testified that at first neither of the defendants was willing to sign the lease as drawn—that Mr. Nakles was finally persuaded by his daughter to sign and then, after much bickering between themselves, Mr. Nakles would not allow his wife to sign. It was therefore either at his direction or with his full knowledge and consent that the wife-defendant refused to execute the lease. Defendants having arbitrarily and without reasonable excuse refused to perform their undertaking, the plaintiffs were entitled to damages for the loss of their bargain. On the basis of the evidence presented by the plaintiffs over and above the $1,000 paid as a down payment and the outlays, such as legal expenses and loss of wages incurred by the plaintiffs on the faith of the contract, the actual loss of profits could have amounted, according to the defendants' own figures, to $75,000. Therefore, even if the charge could be considered inadequate in some respects regarding the recoverable items of damages, the reasonable and moderate verdict that resulted proved any shortcomings in the charge to have been legally harmless: *Harman et ux. v. Chambers,* 358 Pa. 516, 522, 57 A. 2d 842; *Wilkinson v. North East Borough,* 215 Pa. 486, 491, 64 A. 734.

Judgment affirmed.