S. Curtis DEMPSEY and Alice E. Dempsey

v.

Charles W. STAUFFER, and Violet M. Stauffer, James E. Lawrence and Ruth B. Lawrence.

Civ. A. No. 23732.

United States District Court
E. D. Pennsylvania.

Sept. 14, 1961.

Rohrer & Musser, Sam Ferguson Musser, Lancaster, Pa., for plaintiff.

Alfred C. Alspach, Lancaster, Pa., Mark D. Alspach, Philadelphia, Pa., for defendants Stauffer.

James P. Coho, Lancaster, Pa., for defendants, Lawrence.

KRAFT, District Judge.

This case is now before us solely on the issues of damages, all questions of liability having been determined in our earlier adjudication. D.C., 182 F.Supp. 806.

From the evidence, supplemented by stipulations of counsel, we make the following

### Findings of Fact

1. Plaintiffs paid to the defendants Stauffer the sum of $6,467.22 on account of the purchase price of the premises, in weekly installments of $113.46 each, as provided by the contract of sale.

2. In addition thereto, plaintiffs paid to the defendants Stauffer the sum of $3,059.40 representing interest at the rate of 5% per annum on the unpaid balances of the purchase price of the premises, as provided in the contract of sale.

3. Defendants Stauffer expended the sum of $754.34 in payment of real estate taxes, water and sewer rents and electric bills, all of which were plaintiffs' obligations under the contract of sale, and were referable to plaintiffs' occupancy of the premises.

4. The fair market value of plaintiffs' personal property converted by defendants Stauffer *and* Lawrence, at the time of the conversion, was $1,002.07.

### Discussion

Plaintiffs contend that Stauffers' breach of the contract of sale entitles plaintiffs to damages for the loss of their bargain. The rule in Pennsylvania as to the measure of damages for breach of a written contract to convey land was lately restated in Frey v. Nakles, 1955, 380 Pa. 616, 622, 112 A.2d 329, 332:

> "It has been well settled that in a vendee's action against his vendor for breach of a written contract to convey land, the vendee's right of recovery, if the vendor acted in good faith, is limited to the down money, and such other reasonable expenditures that the vendee has incurred in reliance upon the contract. Kargiatly v. Provident Trust Co. of Philadelphia et al., 338 Pa. 358, 12 A.2d 11. However, where a vendor or lessor · arbitrarily and without reasonable excuse, in order to escape the effects of a bad bargain, refuses to comply with his contract, the vendee or lessee is entitled not only to compensatory damages but to damages arising from the loss of his bargain: Bartram v. Hering, 18 Pa. Super. 395; Seidlek v. Bradley, 293 Pa. 379, 142 A. 914, 68 A.L.R. 134. In the latter case, Mr. Justice Kephart said in 293 Pa. at page 383, 142 A. at page 916 that ' * * * Any unjustified failure to perform a written contract, whether this failure be fraudulent or not, entitles the vendee to damages for the loss of his bargain. * * *' "

We think the evidence unquestionably establishes a want of good faith on Stauffers' part, and that plaintiffs would be entitled to recover for the loss

of their bargain if their proofs were sufficient to sustain a recovery. In proving the value of land, the proper criterion is its market value based on the general selling price of land in the neighborhood at or about the time in question. Henkel v. Wabash Pittsburg Terminal R. R. Co., 1906, 213 Pa. 485, 486, 62 A. 1085; Serals v. West Chester Borough School District, 1928, 292 Pa. 134, 136, 140 A. 632; Westinghouse Air Brake Co. v. City of Pittsburgh, 1934, 316 Pa. 372, 375, 176 A. 13; Fisher v. Allegheny County, 1936, 324 Pa. 471, 476, 188 A. 196. Plaintiffs wholly failed to sustain their burden of proving the market value of the real property at the time of the breach.

Plaintiffs relied upon the testimony of Karl B. Wagar, a licensed real estate broker and appraiser. Wagar testified to an overall value, a "rounded figure," of $65,000, of which $23,750 represented value of the land, and $42,000 "depreciated market value" of the building. (Counsel later stipulated that the $65,000 valuation included certain fixtures and equipment in the diner, not necessary to detail for present purposes). Wagar was not interrogated at all concerning market value or "fair" market value. Asked, on *direct examination*, the basis of his land value, he stated: "There are comparable land sales in the area at just about that time, some prior and some later." A moment later the witness said, "We are on land comparables here, the sales of land." He then testified to several particular sales of land in the vicinity, giving the actual sales price in each instance. It is rudimentary that this was not competent evidence of market value. "It has been held in Pennsylvania from an early date that a consideration of particular sales in the neighborhood as fixing market value will not be allowed." Rea v. Pittsburg & C. Railroad Company, 1910, 229 Pa. 106, 116, 78 A. 73, 77. Citations might be multiplied indefinitely. One of the more recent rulings to the same effect is found in Felin v. City of Philadelphia, 1946, 354 Pa. 317, 318, 47 A.2d 227, 228:

"The trial judge correctly stated the settled law of this Commonwealth as follows: ' * * * it is not competent to prove by an expert witness the prices paid for other properties in the immediate neighborhood on direct examination, but he may be asked to state such prices, for the purpose of testing his credibility, good faith, and the accuracy and extent of his knowledge, on cross-examination, and interrogated thereabout, when the cross-examination opens the door upon redirect examination. Brown v. City of Scranton, 231 Pa. 593, 603, 604, 80 A. 1113; Girard Trust Co. v. City of Philadelphia, 248 Pa. 179, 182, 183, 93 A. 947; Pennsylvania Co. for Ins. on Lives, etc., v. City of Philadelphia, 268 Pa. 559, 562, 564, 112 A. 76; McSorley v. School Dist. of Avalon Borough, 291 Pa. 252, 255, 256, 139 A. 848; Serals v. West Chester Borough School District, 292 Pa. 134, 135, 138, 140 A. 632; Bridgman Realty Corp. v. City of Philadelphia, 317 Pa. 449, 452, 177 A. 45.' The reason for the rule is that to allow such testimony on direct examination would lead to the investigation of collateral issues as numerous as the sales."

Wagar's testimony with respect to the value of the improvements was little, if anything, more than hearsay. He had had practically no experience in appraising diners, and he frankly admitted that his estimate was based on inquiry and discussions with others. He gave an affirmative answer to the following question on cross-examination: "And all of the figures which you got with respect to replacement costs were estimates given to you by other persons whom you have not as yet identified on the record; is that correct?"

The price at which the diner premises were re-sold to the Lawrences ($66,000) is not competent evidence on the issue of fair market value. Such evidence would be subject to the same objection as evidence of particular sales, generally. The reason for the exclusionary rule is well

stated in Henry, "Pennsylanvia Evidence," Sec. 48:

"But evidence of the price paid for particular pieces of land in the vicinity is not competent evidence of value, even on cross examination, since such price may not represent the intrinsic worth of the land or the general public estimate, which is the criterion of value, but may have been paid as the result of fancy or caprice of the purchaser, and to admit the evidence would necessitate the admission of evidence in rebuttal concerning such particular tracts in order to determine whether or not the price received fairly represented the value of the property, thus introducing in evidence as many collateral issues as there are tracts."

Cases in which an *owner* has been required to state on cross-examination the price which he paid for the very land whose market value was in controversy, are obviously not in point. See, Rea v. Pittsburg & C. Railroad Company, 1910, 229 Pa. 106, 117, 78 A. 73; Greenfield v. City of Philadelphia, 1925, 282 Pa. 344, 351, 127 A. 768; Walnut Street Federal Savings & Loan Ass'n v. Bernstein, 1959, 394 Pa. 353, 356, 147 A.2d 359.

Since plaintiffs failed to establish the fair market value of the premises at the time of the breach, it is clear that they may not recover damages for the loss of their bargain.

■ There appears to be no dispute that plaintiffs regularly met their interest payments on the unpaid purchase price during the entire period of their occupancy. Plaintiffs, therefore, are clearly entitled to the return of their payments on account of the purchase price. Interest on the unpaid purchase price ordinarily is the quid pro quo for possession and enjoyment by the purchaser. "The estate and the purchase money are things mutually exclusive, and neither party can at the same time be entitled to both:" Leafgreen v. Drake's Exrs., 1930, 300 Pa. 369, 150 A. 656, 657, 75 A.L.R. 312. The jural relations created by the contract of sale, and the mutual rights and obligations of the parties thereunder, are governed by familiar legal principles. See, Sladkin v. Greene, 1948, 359 Pa. 528, 530, 59 A.2d 105, 107:

" 'The vendor is regarded as a trustee of the land for the benefit of the purchaser, and liable to account to him for rents and profits, or for the value of the use and occupation, and the purchaser is treated as trustee of the purchase money unpaid and charged with interest thereon, unless the purchase money has been appropriated, and no benefit has accrued from it to the purchaser' :"

Plaintiffs also sought to recover for the loss of anticipated profits. However, no competent evidence was offered on this issue, and it is our understanding that plaintiffs have abandoned the claim.

Counsel have stipulated that the Stauffers expended the sum of $754.34 in payment of real estate taxes, water and sewer rents and electric bills, all of which were plaintiffs' obligations under the contract of sale, and were referable to plaintiffs' occupancy of the premises. The Stauffer defendants are clearly entitled to recover on their counterclaim for these items.

It appears undisputed that the fair market value of plaintiffs' personal property converted by defendants Stauffer *and* Lawrence, at the time of the conversion, was $1,002.07. The measure of damages is "the value of the goods at the time of the conversion, to which the jury may add interest up to the date of the verdict, unless there are unusual circumstances attendant upon the conversion or detention, such as willful wrong, fraud or outrage, when the jury may give more." Withrow v. Walker, 1909, 41 Pa. Super. 155. We think plaintiffs will be adequately compensated by an award of the value of the goods with interest, and that the facts do not call for an award of punitive damages.

### Conclusions of Law

1. Plaintiffs are entitled to damages against defendants Stauffer in the sum of $6,467.22, with interest thereon from November 14, 1957.

2. Defendants Stauffer are entitled to damages against plaintiffs in the sum of $757.34, with interest thereon from November 14, 1957.

3. Plaintiffs are entitled to damages against defendants Stauffer and Lawrence in the sum of $1,002.07, with interest thereon from November 14, 1957.

Counsel will, within 30 days, prepare and submit a proposed form of judgment.